NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY FENTON,<br><br>    Plaintiff,<br><br>    v.<br><br>VELOCITY WELLNESS INSTITUTE, VELOCITY CHIROPRACTIC, ABBVIE INC., f/k/a ALLERGAN, INC., f/k/a ALLERGAN plc, and f/k/a ZELTIQ AESTHETICS, INC., JOHN DOES 1-20 & ABC CORPORATIONS 1-20 (Fictitious Corporations),<br><br>    Defendants. | Civil Action No. 23-22927 (RK) (JTQ)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Remand, (ECF No. 24), brought by Plaintiff Kimberly Fenton ("Plaintiff"), which was filed on March 1, 2024. The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion to Remand is **GRANTED**.

I.    **BACKGROUND**

This case arises from a procedure performed with an allegedly defective medical device that injured Plaintiff and for which Plaintiff seeks to hold the manufacturer and medical providers liable. Plaintiff is a resident of Monmouth County, New Jersey. ("Compl.," ECF No. 1-1.) She alleges that she was an employee at Defendant Velocity Chiropractic ("Velocity Chiropractic") when "[h]er superiors/owners at Velocity Chiropractic embarked on a separate venture known as

Velocity Wellness Institute which offered a variety of aesthetic and anti-aging services." (*Id.* ¶ 1.) Among the services offered by Defendant Velocity Wellness Institute ("Velocity Wellness") is "Coolsculpting": an aesthetic procedure to "freeze unwanted fat cells." (*Id.*) In September 2022, Plaintiff was approached by the owners of Velocity Chiropractic to volunteer to assist Velocity Wellness employees who were training to perform CoolSculpting procedures. (*Id.* ¶ 2.) Plaintiff underwent a CoolSculpting procedure performed by one of the Velocity Wellness trainees. (*Id.* ¶ 3.) Allegedly as a result of this procedure, Plaintiff developed Paradoxical Hyperplasia ("PH") which has caused permanent disfigurement in the form of "permanent cutaneous and subcutaneous tissue damage." (*Id.* ¶¶ 3, 24.j.)

Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Monmouth County on October 13, 2023, bringing the following claims: (1) Strict Product Liability – Defective Design, (*id.* ¶¶ 1–15), (2) Strict Product Liability – Failure to Warn, (*id.* ¶¶ 16–26), (3) Negligence, (*id.* ¶¶ 27–44), (4) Medical Monitoring, (*id.* ¶¶ 45–50), (5) Negligent Misrepresentation and Concealment, (*id.* ¶¶ 51–61), and (6) Fraudulent Misrepresentation and Concealment, (*id.* ¶¶ 62–72). The Complaint named Velocity Chiropractic, Velocity Wellness, and AbbVie, Inc. ("AbbVie"), the parent company of the manufacturer of the CoolSculpting technology, Zeltiq Aesthetics, Inc. as well as John Does and ABC Corporations. (*See generally id.*; "NOR," ECF No. 1 ¶ 2 n.1.)

On December 6, 2023, AbbVie timely removed this case. ("NOR," ECF No. 1.) AbbVie is incorporated in Delaware and has its principal place of business in Illinois. (*Id.* ¶ 7.) In its Notice of Removal, AbbVie argues that this Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 1441 "because there is complete diversity between Plaintiff and the only properly joined and served Defendant (AbbVie), and the amount in controversy exceeds

2

$75,000.00." (*Id.* at 1.) AbbVie contends that Velocity Chiropractic and Velocity Wellness (collectively, "the Velocity Defendants") were fraudulently joined, and thus, the Court should ignore their citizenship for purposes of subject-matter jurisdiction. (*Id.*)[1]

On January 21, 2024, Velocity Wellness filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 21.) Plaintiff filed a Brief in Opposition. (ECF No. 24.) In it, Plaintiff argued that Velocity Wellness's Motion should be denied, but also that AbbVie's Notice of Removal was improper because the Court lacks subject matter jurisdiction over this action under 28 U.S.C. § 1322(a). (*See generally id.*) AbbVie then filed a response to Plaintiff's Brief in Opposition, which AbbVie construed as a Motion to Remand. (*See* "Opp.," ECF No. 31.) On April 1, 2024, Velocity Wellness filed a second Motion to Dismiss. (ECF No. 33.) Thereafter, AbbVie filed a letter requesting that the Court "first address the threshold issue of fraudulent joinder presented in Defendant's Notice of Removal (ECF 1) and Plaintiff's March 1, 2024 Opposition to Defendant's Motion to Dismiss (ECF 24) ('Motion to Remand') prior to ruling on Velocity Wellness's Motions to Dismiss." (ECF No. 34.) Agreeing to AbbVie's request, the Court construed Plaintiff's Brief in Opposition to Velocity Wellness's Motion to Dismiss as a Motion to Remand, finding it appropriate to first

---

[1] Plaintiff is a citizen of New Jersey. (*See* Compl.) Although Plaintiff's state court complaint does not expressly allege the citizenship of the Velocity Defendants, her answers to interrogatories describe the Velocity Defendants' location in Oceanport, New Jersey, (*see* ECF No. 24, Ex. C.), and the parties assume that the Velocity Defendants are also citizens of New Jersey and thus share citizenship with Plaintiff. AbbVie correctly points out that it need not obtain the consent of the Velocity Defendants for removal of this action as AbbVie contends that the Velocity Defendants were fraudulently joined in order to defeat removal. (*See* NOR at ¶ 24 (citing *Am. Asset Fin., LLC v. Corea Firm*, 821 F. Supp. 2d 698, 700 (D.N.J. 2011) (explaining that the rule of unanimity does not apply when non-joining defendants have been fraudulently joined).)

3

address the issue of fraudulent joinder. (ECF No. 35.)[2] The Court now turns to Plaintiff's arguments for remand.

## II. LEGAL STANDARD

United States district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). A defendant may remove to federal court a civil action originally filed in state court if the federal court may exercise original jurisdiction over the matter. 28 U.S.C. § 1441(a). After removal, a plaintiff may move to remand the case if the removal was defective or the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removal statute is "strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted). The removing party bears the "burden of showing that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

When a non-diverse party has been joined, in the absence of federal question jurisdiction, the removing party may avoid remand "only by demonstrating that the non-diverse party was fraudulently joined." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). The Third Circuit has explained the standard for fraudulent joinder as follows:

> Joinder is fraudulent where there is *no reasonable basis* in fact or *colorable ground* supporting the claim against the joined defendant, or *no real intention in good faith* to prosecute the action against the defendants or seek a joint judgment. But, if there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court *must* find that joinder was proper and *remand* the case to state court.

---

[2] The Court therefore administratively terminated Velocity Wellness's Motions to Dismiss pending the Court's resolution of Plaintiff's Motion to Remand. (ECF No. 35.)

4

*Id.* at 851–52 (emphasis added) (cleaned up). For a claim to lack a colorable basis, "it must be wholly insubstantial and frivolous." *Id.* at 852. The removing party "carries a heavy burden of persuasion in making this showing . . . It is logical that it should have this burden, for removal statutes are to be strictly construed in favor of remand." *Id.* at 851. If there is even a possibility the complaint states a claim that is colorable in state court, the district court "may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims . . . ." *Id.*

### III. DISCUSSION

According to AbbVie, Plaintiff's Complaint "makes no allegations against the Velocity Defendants," thus rendering their joinder fraudulent. (Opp. at 2.) As noted above, in her Complaint, Plaintiff alleges that she was an employee at Velocity Chiropractic, that she was encouraged by Velocity Chiropractic to receive the CoolSculpting procedure administered by trainees at Velocity Wellness, that she received this procedure from the Velocity Wellness trainees, and that the procedure caused her to develop PH. (Compl. ¶¶ 1–3.) The remainder of Plaintiff's Complaint makes allegations generally against "Defendant" or "Defendants." (*See generally id.*) For example, Plaintiff alleges that Defendants failed to inform her about other available treatment options and failed to advise her of the risks associated with the CoolSculpting procedure. (*Id.* ¶ 5.) According to Plaintiff, she was never presented with any paperwork, did not sign any documents for informed consent, and thus "was not aware that by undergoing the CoolSculpting procedure she was subjecting herself to a risk of developing permanent deformities in the form of substantially increased and damaged fat tissue and skin laxity which requires multiple invasive surgeries to remove." (*Id.* ¶¶ 23, 38.)

AbbVie contends that Plaintiff's group-pleading style is impermissible. (Opp. at 4.) According to AbbVie, Plaintiff's Complaint, which alleges product-liability theories, is, in truth, directed only at the manufacturer of the CoolSculpting technology. (*Id.*) AbbVie points out that the only allegations that mention the Velocity Defendants by name appear in Count I: Strict Product Liability – Defective Design, and under New Jersey law, such claims are only cognizable against the medical provider in limited circumstances, none of which are alleged in Plaintiff's Complaint. (*Id.* at 5–6.)

First, the Court notes at the outset that AbbVie's contention fails to acknowledge that for each of Plaintiff's counts, the Complaint incorporates the substantive allegations of the preceding paragraphs by reference. (*See* Compl. ¶¶ 16, 27, 45, 51, 62, 73.) Second, turning to the standards for strict product liability actions under New Jersey law, such an action can be brought "against a health care provider for harm allegedly caused by a medical device that was manufactured or designed in a defective manner" when, *inter alia*:

> the provider knew or should have known of the defect in the medical device which caused the injury, death or damage, or the plaintiff can affirmatively demonstrate that the provider was in possession of facts from which a reasonable person would conclude that the provider had or should have had knowledge of the alleged defect in the medical device which caused the injury, death or damage . . . .

N.J. Stat. Ann. § 2A:58C-11. AbbVie contends that there are no allegations "that [the Velocity Defendants] knew or should have known of some alleged product defect." (Opp. at 6.) However, in Count I, Plaintiff alleges: "*Defendants* knew its CoolSculpting System device was unreasonably dangerous, unsafe, and/or defective and could cause harm to those who used it, including Plaintiff. Specifically, *Defendants* knew that its medical device can cause tissue damage and permanent deformity to the user's body in the form of Paradoxical Hyperplasia." (Compl. ¶ 9 (emphasis

6

added).) Thus, the issue before the Court is whether this allegation is so wholly insubstantial and frivolous as to find fraudulent joinder here.

As noted above, it is insufficient under New Jersey law for Plaintiff to simply allege that she received a CoolSculpting procedure, which caused her injury, from the Velocity Defendants. She must also allege that they knew or should have known that the procedure was defective or were in possession of facts from which a reasonable person could conclude that they knew or should have known that the procedure was defective. *See* N.J. Stat. Ann. § 2A:58C-11. Here, Plaintiff has merely alleged generally that "Defendants" knew that the procedure was defective. (Compl. ¶ 9.) AbbVie contends that such "shotgun pleading" style is impermissible in that a plaintiff may not assert multiple claims against multiple defendants without specificizing which claim is brought against which defendant, citing *Nash v. New Jersey*, No. 22-01804, 2022 WL 4111169 (D.N.J. Sept. 8, 2022). (NOR ¶ 14; Opp. at 4.)

Courts in this district generally agree that this type of "group pleading" does not satisfy Federal Rule of Civil Procedure 8, because it does not sufficiently place defendants on notice of the claims against each of them. *See Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (collecting cases); *see also* Fed. R. Civ. P. 8 (requiring a "short and plain statement" of each claim). Indeed, the court in *Nash*, in explaining what constitutes shotgun pleading and finding it impermissible, reasoned that such pleadings "fail to meet the pleading requirements of Rule 8." 2022 WL 4111169, at *2.

The problem with AbbVie's argument is that it misinterprets the standard for removal under the fraudulent joinder doctrine. The fraudulent joinder analysis does not depend on whether a plaintiff has met the *federal* pleading requirements: whether Plaintiff's Complaint fails to meet the short and plain statement requirement in Federal Rule of Civil Procedure 8—or fails to state a

claim under Federal Rule of Civil Procedure 12(b)(6)—is not dispositive. *See id.* ("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."); *McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 237 (D.N.J. 2020) (observing in the context of a motion to remand based on fraudulent joinder that "the benchmark here is considerably lower than that triggered by Rule 12(b)(6)"); *see also Edwea, Inc. v. Allstate Ins. Co.*, No. 10-2970, 2010 WL 5099607, at *5 (S.D. Tex. Dec. 8, 2010) (collecting cases for the proposition that the "majority of courts have held that a federal court should not look to the federal standard for pleading sufficiently under Rule 8 and 12(b)(6)" in analyzing fraudulent joinder). Rather, a court must consider whether there is "even a possibility" that plaintiff's claim could survive in "*state* court." *Batoff*, 977 F.2d at 851 (emphasis added).

Here, AbbVie's contention is that the Complaint has not been pled with adequate specificity—that is, it would fail to survive a motion to dismiss under the federal rules. However, in New Jersey courts, motions to dismiss under the New Jersey Rule of Court 4:6–2(e) for failure to state a claim "should be granted in 'only the rarest [of] instances.'" *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 255 (N.J. 2005) (quoting *Lieberman v. Port Auth. of N.Y. & N.J.*, 622 A.2d 1295 (N.J. 1993)). In New Jersey, courts are cautioned to search a complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." *Id.* (quoting *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 34 (N.J. 1989)). To that end, courts are

required to undergo a "meticulous and indulgent examination" of a complaint to discern whether it states a claim. *Printing Mart-Morristown*, 563 A.2d at 48.

The Court finds that AbbVie has not met its heavy burden of demonstrating that the allegations in the Complaint are inadequate under New Jersey's more lenient pleading requirements. The Complaint generally alleges the elements for holding a medical provider strictly liable under a defective design theory,[3] and AbbVie has not cited the Court to a single case which addresses the pleading requirements in state court. (*Compare* N.J. Stat. Ann. § 2A:58C-11, *with* Compl. ¶¶ 1–9.) In order for a court to find fraudulent joinder, "[i]t must be *impossible* for a state court to find that a plaintiff has stated a valid cause of action." *Pinnacle Choice, Inc. v. Silverstein*, No. 7-585, 2008 WL 2003759, at *7 (D.N.J. May 6, 2008), *report and recommendation adopted*, No. 07-5857, 2008 WL 2152228 (D.N.J. May 20, 2008) (emphasis added). AbbVie has not demonstrated that it would be "impossible" for a New Jersey court to find a valid cause of action against the Velocity Defendants in Plaintiff's Complaint. *Id.*; *see also Spangenberg v. McNeilus*

---

[3] The Court notes that Plaintiff also generally alleges the elements of a medical negligence claim in Count III of the Complaint. AbbVie argues in passing and without legal authority that "[t]he complaint contains no medical-negligence claim against the Velocity Defendants . . . ." (Opp. at 4.) The Court disagrees. To establish a negligence claim based on lack of informed consent, Plaintiff must demonstrate that the Velocity Defendants "failed to comply with the applicable standard for disclosure; (2) the undisclosed risk occurred and harmed [] [P]laintiff; (3) a reasonable person under the circumstances would not have consented and submitted to the operation or surgical procedure had he or she been so informed; and (4) the operation or surgical procedure was a proximate cause of [P]laintiff's injuries." *Teilhaber v. Greene*, 727 A.2d 518, 524 (N.J. Super. App. Div. 1999). In her negligence claim in Count III, Plaintiff incorporates the substantive allegations of the previous paragraphs of the Complaint, (Compl. ¶ 27), throughout which Plaintiff alleges that Defendants failed to inform her about other available treatment options, failed to inform her of the risks associated with the CoolSculpting procedure, and never presented her with any paperwork, including an informed consent form, (*id.* ¶¶ 5, 23). Plaintiff alleges that she "was not aware that by undergoing the CoolSculpting procedure she was subjecting herself to a risk of developing permanent deformities in the form of substantially increased and damaged fat tissue and skin laxity which requires multiple invasive surgeries to remove," (*id.* ¶ 38), that she "at no point, signed any documents for informed consent," (*id.* ¶ 23), and that she developed PH as a result of the CoolSculpting procedure, (*id.* ¶ 3).

*Truck & Mfg, Inc.*, No. 18-4915, 2019 WL 1930062, at *4 (E.D. Pa. May 1, 2019) ("[T]he relevant issue [is] the legal possibility of the claim, not the merits.").[4]

Courts in this Circuit have reached the same result. For example, in *Pinnacle Choice*, certain defendants argued that other defendants had been fraudulently joined as evidenced by the fact that the complaint was not pled with adequate specificity. *Id.* at *7. The court rejected the defendants' argument: "This argument would have the Court take a micro-view of the pleadings, parsing the complaint to determine whether a claim is pleaded with detailed specificity. Such an inquiry, in this Court's opinion, is excessive in the context of fraudulent joinder . . . ." *Id.* Likewise, in *Spangenberg v. McNeilus Truck & Mfg., Inc.*, the defendants argued that a complaint "contained no allegations of wrongdoing by [the non-diverse defendant] and simply 'lumps' him together with other defendants," and thus the complaint "does not include specific allegations that describe with any particularity [the defendant's] role in committing the alleged torts." No. 18-4915, 2019 WL 1930062, at *2 (E.D. Pa. May 1, 2019). The *Spangenberg* court rejected this argument, concluding that the "argument mixes the standards for fraudulent joinder and a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* at *3. The court explained that fraudulent joinder is not shown by demonstrating that a complaint does not state a sufficient claim against the non-diverse defendants;

---

[4] AbbVie also argues that the Complaint itself undermines Plaintiff's product liability case against the Velocity Defendants because it alleges that "[b]ecause of the innate defective nature of the CoolSculpting System device, Plaintiff and the individuals performing the CoolSculpting procedure on Plaintiff, through the use of reasonable care could not have discovered the defective nature of the CoolSculpting device or its perceived dangers." (Compl. ¶ 12.) The Court recognizes that the Complaint is not a model of clarity and that Plaintiff ultimately may not succeed on her claim against the Velocity Defendants. However, the Court may not find that the Velocity Defendants were fraudulently joined "based on its view of the merits of those claims." *Batoff*, 977 F.2d at 851. AbbVie's argument that Plaintiff's Complaint is internally inconsistent strays too far into a merits inquiry at this stage. *See In re Briscoe*, 448 F.3d 201, 217–18 (3d Cir. 2006) ("[W]e reject[]the district court's decision to conduct a merits determination in the context of a fraudulent joinder inquiry."); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (explaining that a district court may not reach a claim's merits in deciding fraudulent joinder).

instead, the removing party "must show that it is *legally impossible*" for the plaintiff to prevail against those defendants. *Id.* (emphasis in original).

Based on the above, the Court concludes that AbbeVie has failed to carry its heavy burden of demonstrating that the Velocity Defendants have been fraudulently joined. Because the parties do not contend there is any other basis for federal jurisdiction, the case must be remanded. *Boyer*, 913 F.2d at 111 ("If there is *even a possibility* that a state court would find that the complaint states a cause of action . . . the federal court must find that joinder was proper and remand the case to state court." (quotations omitted, emphasis added).)

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand, (ECF No. 24), is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 15, 2024